IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL F. DUANE #N36278,        )
                                )
            Plaintiff,          )
                                )
    v.                          )    No.  11 C 3180
                                )
WARDEN MARCUS HARDY,            )
                                )
            Defendant.          )

MEMORANDUM OPINION AND ORDER

This Court's May 19, 2011 memorandum order (the "Order"), issued less than a week after it had received the 42 U.S.C. §1983 ("Section 1983") Civil Rights Complaint ("Complaint") submitted by pro se plaintiff Daniel Duane ("Duane"), stated in part:

> To turn to Duane's Complaint, it appears obvious that he has used some other Stateville inmate's typewritten pleading, filling in his own name in handprinting in the Complaint's opening paragraph and on the signature page. If such is the case, as seems quite clear, it really makes no sense for this action to move forward without meaningful input as to the posture of the earlier case (or perhaps earlier cases).

Instead of pursuing that suggested line of inquiry, the Attorney General's Office opted to seek (and to obtain) an extended time period within which to file a responsive pleading, which turned out to be a Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss, coupled with a supporting memorandum of law.

In the meantime this Court had received an identical complaint, with the same whiting out and substitution of the name of the plaintiff in that case, from another Stateville Correctional Center ("Stateville") inmate. And on November 4,

2011 a motion for reassignment on relatedness grounds of still a third identical complaint was tendered to this Court and was denied. There would seem to be little doubt that more of such copycat complaints (in addition to the copied original) were brought before this District Court.

It is painfully obvious that the Attorney General would have been better advised to have heeded this Court's May 19 signal than automatically to set this case on an individual Rule 12(b)(6) path.[1] This is not necessarily a criticism of that office, but rather a recognition that there is something unwholesome about the wholesale filing of identical complaints[2] that, under this District Court's random assignment system, get distributed to the calendars of numerous judges. If any individual plaintiff were to try that, it would be denounced (properly) as an impermissible effort at forum shopping. And it is no better when separate plaintiffs do what amounts to the same thing, imposing the burden on a number of different judges to do the same work to no good purpose. Nor can that burden be avoided by efforts to have the multiple lawsuits reassigned to a single

---

[1] It is just as painfully obvious that this Court was ill advised not to have pushed for the pursuit of that route, rather than letting the case go forward as it has with the briefing of the motion to dismiss.

[2] Many of the Complaint's allegations read as though this were a putative class action, and it is almost certainly the case that not all of the things alleged have impacted Duane directly.

judge under this District Court's LR 40.4, because the individual differences among inmates (see, e.g., n.2) are such that the cases would not be capable of disposition in a single proceeding as required by LR 40.4(b)(4).

It would be a logistical nightmare for any of the judges on this District Court to attempt the task indicated in the Order (it will be remembered that Warden Hardy is required to be named as the defendant in every federal habeas case brought by a Stateville inmate, in addition to his being a targeted defendant in a great many Section 1983 lawsuits other than those created by the whiting-out process described earlier). That task of tracking down (1) the original lawsuit that Duane and others have now parroted, (2) the cookie-cutter complaints then filed by Duane and others and (3) any judicial opinions by this Court's colleagues (or perhaps by the Court of Appeals) in the original case or in its copycat successors would likely provide the kind of information that would greatly facilitate the proper handling of this case.

It is worth remembering what our Court of Appeals has taught in <u>Steidl v. Gramley</u>, 151 F.3d 739, 741-42 (7th Cir. 1998) as to a similar attempt to hold a warden personally liable under Section 1983 for every shortfall in the living conditions about which an inmate might complain:

> For the purposes of a motion to dismiss, a warden cannot be assumed to be directly involved in the

> prison's day-to-day operations. See Duncan v. Duckworth, 644 F.2d 653, 656 (7th Cir. 1981). This principle does not impose a substantive limitation on a warden's liability beyond the established one against vicarious liability. Nor does it raise the bar for the pleadings of a class of civil rights plaintiffs. It is simply the uniform application of a rule of construction: an inference that a warden is directly involved in a prison's daily operations is not reasonable.

And the cases are legion that apply the principle that "extreme deprivations are required to make out a conditions-of-confinement claim" (Hudson v. McMillian, 503 U.S. 1, 9 (1992)) as the basis for rejecting a great many attacks that attempt to invoke Section 1983 in such cases.

In sum, the present Rule 12(b)(6) motion is denied without prejudice. After the Attorney General's office provides the information called for here (something that this Court hopes can be done promptly), this Court will be in a better position to chart the future course of this litigation. This action is set for a status hearing at 9 a.m. February 17, 2012 for a report on progress in the effort ordered here.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 17, 2012